Mr. Orbovich, good morning. You may proceed. May it please the Court, my name is Sam Orbovich. With me is Lucene Hoppe. We're from Fredrickson & Byron, and we represent Appellant Key Medical Supply, Inc., a specialty provider of durable medical equipment, prosthetics, orthotics, and supplies, known in the trade as DemiPost. Key Medical's clientele are largely, over 80% of its clientele, are largely persons with developmental and other disabilities. The question presented is did the district court err when it granted the United States motion to dismiss for lack of subject matter jurisdiction without first considering all of Key Medical's federal and constitutional claims? Key Medical filed a verified complaint to enjoin the Medicare Competitive Bidding Program. Key Medical alleged that CMS blocked Key Medical and other bidders from submitting bona fide bids and extended the Medicare Competitive Bidding Program into DemiPost that would be covered by other secondary payers, including the Medicaid program. That resulted in an economic harm to Key Medical and to an access harm and a denial of access to persons with developmental disabilities who use higher-cost DemiPosts for their entire life because of their chronic conditions. The verified complaint not only alleges that CMS committed a plain violation of statute. It also alleges that they violated the Administrative Procedure Act, the Due Process, Equal Protection, and Taking Clauses of the United States Constitution. And the relief that we request is that you reverse the district court's dismissal and remand the matter for a determination on the merits. When CMS first saw our verified complaint, their statement was clear. Their counsel said to Judge Frank Below, if it is not possible for plaintiff or anyone else to submit a bona fide bid, they will not be held to that bid. If the only bid they can submit is a tainted one or an invalid one and the reason for that taint is attributable entirely to the Secretary's faulty design, competitive bidding will not work. And they also said we don't need a lawsuit to shut this aspect of the program down. With or without a lawsuit, we would have no interest in upsetting patient care like that. Now the problem here, Your Honors, are that the disabled community served by Key Medical must be able to rely on vendors who are able to coordinate their Medicare demipost benefits with a demipost accessible from other secondary payers like Medicaid, like private insurers, like the Medical Assistance Waiver Program. Counsel, I understand Medicaid is the main issue here. Could Minnesota change its Medicaid plan to do away with this problem? Could Minnesota change its Medi-no. Why not? It could not. Because in the third declaration by Sarah Anderson, there's an attachment that is a directive to Medicaid agencies from CMS, and that directive indicates that Medicaid cannot, because of competitive bidding, cannot take over the responsibility of paying something that Medicare would pay and that if a non-winner provided the Medicaid benefit, they even gave them a code, M-115, that was to be used by the state agencies. So CMS is telling the state agencies you can't work around this. Now, the lower court relied heavily on a district court, a circuit court decision out of the D.C. Circuit named Texas Home Care. And while this case is distinguishable from Texas Home Care, the problem that I have with Texas Home Care, and I ask you not to follow that case and depart from it, is the Constitution does not authorize Congress to empower a federal agency to dole out benefits or eliminate part of a regulated party's business arbitrarily and capriciously and then evade judicial review when it does so. Congress can't legislate around the Fifth Amendment. And this is said another way. When CMS decided that it was not going to strictly abide by Congress's enabling legislation, it doesn't earn the seven jurisdictional shields of that enabling legislation. Now, I know that in their brief... Well, you're making the type of argument that Justice Scalia makes and doesn't seem to be succeeding in. I don't mean to be flippant about it. No, no. Justice Scalia, his interesting quote in that Whitman case where Congress does not hide elephants in mouse holes and if there was ever an elephant, it would be tacking Medicaid onto a Medicare competitive bidding program. But I think that when CMS criticizes our complaint because it describes so much detail and describes what's wrong with the pricing and what's wrong with the contracts and says, therefore, it falls squarely within the jurisdictional shields, what's fundamentally wrong with CMS's position is that... I'll use a heartland analogy. When can you drop a two-ton boulder into a lake and not have ripples and waves? When they decided not to follow the enabling legislation, of course those things are going to be broken and that's going to ripple down. And importantly, if we could cut through all the weeds, Congress did not delegate to CMS the definition of what constituted a bid for Medicare competitive bidding. They delegated a lot of things. They delegated a bidding structure, but they did not delegate a bid. Congress said it's a short but clear definition. Bid defined. In this section, the term bid means an offer to furnish an item or service for a particular price and time period that includes, where appropriate, any services that are attendant to the furnishing of the item or service. And then CMS passed a regulation that said a bid had to be bona fide. And there were three tiers to being a bona fide bid. Cost of acquisition, so what it costs Key Medical to buy the product. A reasonable overhead and a reasonable profit. Who could complain about a system that allows you to bid that? Except the major flaw here is that CMS didn't use that definition for a bid when it enacted its program that allows people to submit bids. CMS changed it. What CMS relied on was the old Medicare fee schedule and told bidders your bid had to be at or below the Medicare fee schedule. Counsel, do you think those old amounts were payment amounts? Because you know what subsection A says. Yes, yes. Subsection A says they have the authority on payment amounts. No, it's not payment amounts. It sounds to me like they're payment amounts. Congress envisioned a system whereby they would take bids from competitors, and that's the bid I'm talking about. CMS would analyze those. Then Congress had a statute, a cost comparison statute. If the total amount paid to contractors under those bids and under that system yielded payment amounts that would be less than what the free market under the old system would have allowed, then they could award contracts. So the bids I'm talking about are not the thing that comes out at the end of the mathematical equation, but what goes in first by the competitor. And CMS rigged the system, always in favor of CMS's competitive bidding program and always against the free market. If they would have, when my client attempted to put in bona fide bids, they were rejected as the first declaration that Sarah Anderson establishes. They were rejected with a warning that they were above the Medicare fee schedule. Congress did not say to competitors, your bid shall be the Medicare fee schedule or less. Congress didn't delegate that to CMS. They had programs ahead of this. They had demonstration programs. You know the proper term, and I don't, but you know what I'm referring to. They had those kind of programs. Did they use that kind of structure in those programs or not? No. Not at all? Not in the original ones. No, that doesn't sound like them. Go ahead. Well, if you look at Appendix 218, you will see where they admit that in the demonstration programs, the earlier ones, some of the bids resulted in new payment amounts higher than the fee schedule. A lot were lower. That tells you right there that they could not have been using the Medicare cap. Now, they did use the Medicare cap on the first round of bidding. There were nine competitive bidding areas. They used it in the second round, the one that Key Medical is in. Now, who does this affect? This affects those people who use the highest cost demipost items. When it costs my client $112 to buy one item that they are willing, in the single payment amount, to pay less than $30 for, that's a big issue.  and allowed bidders to submit whatever those three things add up to, they would have gotten higher results in the competitive bidding. The other part of our claim is that they added Medicaid to the Medicare competitive bidding. Winning bidders not only took my client's Medicare business in the competitive bidding areas, they handed them my client's Medicaid business for duly eligible clients. If you look at Congress's statute, this program is limited to, quote, the furnishing of demiposts under this section, Medicare. They expanded it to the furnishing of demiposts that Medicare would have never covered,  which would then trigger and open the door for the Medicaid and other secondary payers. No house built on a seriously flawed foundation can attain level floors, square corners, or plumb chandeliers. We respectfully request that this Court reverse the district court and remand this case for a determination on the merits. And I'll give you additional time for rebuttal. I was struck in this case, especially by Judge Frank's deep feelings about this. I've never, it's been a long time since I've read something in his final statement. It's a sad day for those of us who believe when a judge adheres even handedly to his or her oath of office, justice will prevail. And he's concerned because some of these people are not going to get the supplies they need because of administrative, this bureaucracy that the government has set up. And he's concerned that because of the Texas home care case, he cannot evaluate arbitrary and capricious conduct by CMS. That's where I really believe that this Court should depart from Texas home care. If Congress passed a statute that said, we are arbitrarily and capriciously going to take those people whose vendor name starts with A through K and give them all the Medicaid business and nobody else, an arbitrary and capricious statute, that would fall under the Fifth Amendment. Congress can't empower, that's why the reading of this shield is wrong. Congress can't empower a federal agency to do more than what Congress itself could do. Thank you. I'll give you an extra minute on rebuttal because I did want your reaction to Judge Frank's statement. We'll hear from the Secretary. Mr. Schultz. Good morning. You may proceed. Good morning. Thank you, Your Honor. Benjamin Schultz on behalf of the Secretary. When Congress created the Medicare Competitive Bidding Program, it understood that the program was expected to create massive savings not just for the government but also for beneficiaries who in most cases had to provide co-pays for the items. At the same time that Congress recognized that the program would create massive savings, it also recognized that any delay in the implementation of the program would reduce or potentially even eliminate some of those savings. And that's why Congress enacted an exceptionally clear bar on judicial review. And in this case, the district court properly recognized that the statutory claims that the plaintiff is bringing in this case fall within that bar. I also want to clarify just because I think the court's questions at the very end of the appellant's argument, the court was worried about some of the access issues. And I just want to be clear that we very much disagree with any indication from the district court's opinion that there will be access issues. And we certainly disagree with any indication that we were arbitrary and capricious. Well, disagree or not, did Judge Frank have any basis for expressing these strong feelings? Well, Your Honor, we believe that the judge was incorrect in that. And at the very least, the agency was not arbitrary and capricious in concluding that there would not be access issues. And again, recognizing, of course, that this wouldn't be something that the court lacks jurisdiction over anyway. Even if the court were to find jurisdiction, it's important to understand that in the first round of competitive bidding, you had a bunch of metro areas where the fee schedule price was higher in every single case than the price that the suppliers bid on, were willing to contract at, and in fact agreed to provide services for. As far as the record indicates, there were no access problems in those metro areas. And at the very least, it was not arbitrary and capricious for the Secretary, in continuing its policy in round two, to say, okay, the first time we did this, people bid below that $35 rate, and we haven't seen any indications that beneficiaries are having trouble getting access. Furthermore, there are enforcement mechanisms built into the system. So if it did turn out that a supplier who had bid and who had agreed to provide these tubes, for example, at the lower rates, if there were some indication that they were refusing to provide service, the Secretary would be able to take enforcement action against that supplier, up to and including terminating that contractor from the program, which I think no contractor would want. So there are... So are these areas you refer to those that have more robust Medicaid programs? Some of them have more robust Medicaid programs, but not all. But that's not a constant. That's correct. And, Your Honor, I think as we explained in the district court, it turns out that there are at least 11 states whose Medicaid programs reimburse at or below the Medicare rate. So in at least 11 states, the state Medicaid agency also concluded, apparently, that these tubes could reasonably be supplied at the Medicare fee schedule rate. And those are states that have very weak Medicaid programs, right? Well, Your Honor, I wouldn't want to take a position on whether or not... They pay less money, right? Well, we know that they pay less money for one particular tube. Whether or not that classifies them as weak, I'm not quite in a position to say. But regardless, the important point here is that if the court were concerned about beneficiary access, what the agency did here was not arbitrary and capricious. 110 different suppliers agreed to contracts in the first round of Medicare competitive bidding in those metro areas. 110 different ones. Either they all lied when they submitted their bids, or the secretary at least reasonably concluded that these products could be provided at or below the Medicare fee schedule rate. Does it change the program to a mail-order program? I think that's a point by your adversaries. My understanding is that there are certain supplies that can be obtained from mail order, but at the same time, even in the Minnesota area, after we implemented competitive bidding, that there are still local suppliers. And I think the amicus even conceded that, that there were at least eight suppliers in the Minneapolis competitive bidding area that were located very close to downtown Minneapolis. I can't remember the exact marker they used. It was like 50 miles or something like that. But they found at least eight suppliers. So the idea that beneficiaries are losing access, at the very, very least, it was not arbitrary and capricious for the secretary to so conclude. Your argument is we never reached that question? That's exactly right. So we're not permitted to because Congress has foreclosed any judicial review? Your Honor, that's right with two caveats, and I want to make sure that we're clear about the caveats. And this might give the Court some comfort. First of all, we haven't argued in this case that the preclusion of judicial review precludes constitutional claims. We've simply said that the constitutional claims that the plaintiff has raised in this case are so insubstantial that they don't even raise a federal question, and so you could just dismiss for lack of jurisdiction for that reason. And in any event, if the Court were uncomfortable doing that, the Court could just find on the merits that they failed to state a claim, and that would be an alternate grounds for affirmation. So put the constitutional claims to one side. In addition, although we could have done this, we have not in this case advocated for the proposition that true ultra vires action, in the sense that this Court used that term in the Nebraska State Legislative Board case, would be barred by the judicial review. Now, I'll note that in the Texas Alliance case, you had, among other things, a claim of ultra vires action, and the D.C. Circuit concluded that that was barred by the statute, and that may well be the correct outcome. But there's no need for the Court to even go that far in this case because, as this Court explained in the Nebraska State Legislative Board, you can't simply just attach a claim of ultra vires action and escape the judicial review bar. It has to be so far beyond the pale and so obvious that what the Secretary is doing is ultra vires that you can even come within that unique exception. But the best the other side does is they said, well, bid is not in here. It says bidding structure. It says payment amounts. It doesn't say bid in the things that we're precluded from looking at. Well, Your Honor, what the statute says, it just describes a bid as being an offer to provide an item and services. And just taken on its face, it's hard to see how even if the plaintiff's theory is right and these items cost a whole bunch of money, how that means that the Secretary has done anything contrary to statute. If for some reason a supplier were willing to provide this below cost, if it's still willing to provide the item and services, that would seem to be consistent with the statute. Now, it is true that the Secretary has issued a regulation saying that it requires bids to be bonafide. But if the provider's allegations were correct, that would at most show a violation of the Secretary's regulations. It wouldn't show ultra vires action. But in any event, the court doesn't even need to go that far because at the end of the day, all that you have here is you have a fact-based claim. That's not the kind of dispute that triggers ultra vires action. It's not – this is not – Again, all we have is what? I missed the last portion. I'm sorry. All you have here is a fact-based claim where one person is saying that the Secretary acted arbitrary and capriciously and the Secretary is saying that no, she did not. That's not a situation in which everybody would agree and it's clear from the face of the legal claims that the Secretary is acting contrary to statute. And I would add that this was a situation – I'm sorry. Well, I want to go back to sort of basic principles and maybe I missed – I'm having a little trouble understanding exactly how this system works. Sure. So pre-bidding, there was a reimbursement rate of $35.39, right? Correct, before competitive bidding. And so if you had a Medicare patient who had one of these tubes that cost Key Medical $112, I think they said. That's their allegation, yes. How – we'll assume that's correct. How – were they eating the difference in everyone, every Medicare patient? Or was there – who was making up the difference? If they were Medicaid, would Medicaid make up the difference? So, Your Honor, our understanding from Key Medical's allegations – and I'll note here that the Secretary is very skeptical of Key Medical's claim that these actually cost $112. But regardless, taking that on its face, if – we understand Key Medical's allegations to be that they would sell the first tube to a Medicare patient at a loss, but then because the state Medicaid agency here pays so much more and pays for many more additional tubes, that by, in a sense, roping in the client for the first tube which they could provide at a loss, they would then get to bill state Medicaid for a whole bunch of additional tubes that Medicare wouldn't cover, and then they would make up the difference. Now, I'd just point out that that business model wouldn't work in at least the 11 states where the Medicaid rate is at or below the Medicare rate, and yet there's no indication of access problems in those states, some of which were Round 1 competitive bidding states. Well, even if – even taking out the 11 states where it's at or below, I presume there are a number of states that even if it's above $35, it wouldn't be above $112, which is what they say their out-of-pocket cost is before they even have any service or profit. Your Honor, I don't think the record explains what the fee – All that the record says is that there are at least 11 states that are at or below the fee schedule, but I suspect that Your Honor is right, that if you looked at it, you would find a range where some of them are above the Medicare rate but still well below the $112 figure that Key Medical is quoting. And then my second question is, Key Medical – I think maybe one of their primary arguments is that even if this program was not ultra-virus as to Medicare, you are roping in, so to speak, Medicaid, and that there's no authority under the statute for you to force Medicaid to lower their reimbursement rate. What's your response to that? There are several responses. The first answer is the district court in this case actually evaluated that statutory argument and it agreed with the Secretary's position that the competitive bidding program is validly interpreted as extending to dual beneficiaries. So at the very least, given that the district court agreed with us, it's hard to say that the Secretary's interpretation is so beyond the pale as to come within the definition of ultra-virus action that this court talked about in the Nebraska State Legislative Board case. But even putting that aside, just straight up, dual beneficiaries who are eligible for both Medicare and Medicaid are Medicare beneficiaries. And in fact, Medicaid is the payer of last resort, as this court has recognized, and Medicare is the one who is supposed to be paying first and foremost. And the Secretary reasonably determined that when Congress directed her to extend competitive bidding to Medicare beneficiaries, that meant all Medicare beneficiaries, whether or not they were also individuals who benefit from Medicaid. And I want to clarify, just because I think there's been a misunderstanding here about what the agency's policy is. From the Medicare program's standpoint, if the state Medicaid agency wanted to implement a system where it said, okay, for additional tubes beyond the one that Medicare denies, if you want to go to a supplier like Key Medical who didn't win a contract, if you want to go to a supplier like Key Medical for your additional tubes, the Medicare program has no problem with that. There may be implementation issues. It may be that because of how the computer is set up. You have to approve any change to their Medicaid plan, though, right? Well, Your Honor. The same entity, right, is who approves it? You're correct that the federal government would have to approve the Medicaid plan. It's not clear to us that the state Medicaid plan even prohibits it in the first place, though. I think what they're relying on is a document that they found on CMS's website through Google searching. I'll just add that we do not believe that that document accurately reflects CMS policy, and we are in the process of taking it down. And I think it's very telling that the link that they provide in their declaration is not even a link directly to the website. It's a link to a Google search, and then if you click on the search, you can eventually get to the document, and so you don't have any context for what that document is or how it even ended up on the website, what it's part of. But regardless, the agency does not stand by that document. We don't think it reflects current policy. But even beyond that, the most important thing here is you have a declaration in the record from the government, and I can even give you the joint appendix cite from that. And this is page 216 of the joint appendix, and it says that CMS does not require participation in competitive bidding to get Medicaid payment. So our understanding is that if the Medicaid agency, if they want to work out some sort of system where they allow their beneficiaries to go to Key Medical for the second and third tubes, that's perfectly fine with us. So under your theory, Key Medical would be better off than under the old system because they don't even have to provide the first tube at the loss, but they could provide the second, third tube at the higher reimbursement rate? Assuming Medicaid continues the higher reimbursement rate. Now, they may change their reimbursement rates, but that... Your Honor, I want to be a little careful about answering that question because I think what Key Medical would come up and say is that if they can't get that first tube, then they would have difficulty getting the second tube. But assuming that they were, in fact, able to get that business for the second and third tube, I suspect you're right if their allegations are true about the true cost of this. Well, these things are old hat to you, but for me, I find these regulations mind-boggling. Well, Your Honor, I appreciate that, and if I could just simplify it at a very base level. Well done on your part. At the end of the day, I don't think the court needs to get into any of this because you have an extraordinarily clear bar on judicial review. A claim... I'm sorry. Go on. A claim that the agency acted arbitrary and capriciously under the Administrative Procedure Act is exactly the classic kind of claim that is precluded by bars like this, and the Administrative Procedure Act itself even recognizes it because that arbitrary and capricious standard, which comes from the Administrative Procedure Act, also is something that under APA 5 U.S.C. 701, the Administrative Procedure Act does not apply to the extent that statutes preclude judicial review. So to the extent that anybody is worried about the agency acting arbitrary and capriciously, you have a clear answer from Congress, and that answer from Congress was that it wanted to implement these things quickly and to ensure savings, and I'll just add that it also included a whole bunch of other enforcement mechanisms and ways to police the program, and Congress clearly thought that those were sufficient here. So this was not an off-the-cuff decision by Congress, I think? Well, I don't mean to be flippant about it, but it was thought through, I take it. Exactly. You know what they've done? Well, I shouldn't say the Congress has done to the courts and the immigration system. They've made their wishes clear that they don't want us... Well, anyway. No need to extemporize from the bench. Thank you for your argument. Thank you, Your Honor. Would you give Mr. Orbowich at least four minutes, please? Thank you, Your Honor. First of all, I'd like to point out that counsel only read to you half of the definition of what Congress said a bid was. A bid is not, as counsel said, an offer to furnish an item or service for a particular price and time. That's what he told you. You've got to read the rest of the statute. Any services that includes any services that are attendant to the furnishing of the item or service. Congress told bidders they would be allowed to bid amounts that would be, in essence, what CMS called bona fide. Enough for the acquisition cost, enough for overhead. That's the definition of a bid. They did not implement that. Counsel said that Judge Frank endorsed the statutory argument of CMS. I think that that's a gross overstatement given Judge Frank's highly unusual order here. The court's review of the 1,300-plus page administrative record submitted by CMS showed CMS never bothered to consider at all what would happen after they implemented Medicare competitive bidding to that segment of society, the duly eligible individuals who use both Medicare and Medicaid to provide demipost. And he's right. My client, when they were able to provide Medicare in the competitive bidding area, they're still able to provide it elsewhere, they took a substantial loss on their first two. And then Medicaid would kick in with the rest. But here's the problem that they have, that CMS has. Just look at the third declaration. CMS criticizes us for looking to the Internet. Look at their declarations where they tried to put a good shine on a tennis shoe with respect to pricing of these tubes and their efforts to try to find things on the Internet. That, to me, is incredible. But the point of the matter is, they may disavow a memo that actually went to state agencies. They can't disavow their own code. They put in M-115, a procedural code, to prevent the exact kind of business that Key Medical would get if they had the ability to bill Medicaid directly. And the only person, the only entity, the only vendor that gets to bill Medicaid in that secondary time is the vendor that gets the Medicare denial. And that's the contract winner. That's not Key Medical. And that's not the Medicaid program. That's CMS. They said that there's a substantial benefit to beneficiaries because their copay is reduced. Not Key Medical's clientele. Key Medical's clientele are duly eligible because of their disabilities. They're not paying out-of-pocket for this. It's a reasonable governmental step to provide DEMI posts for these individuals. And what CMS is doing here is usurping the Medicaid authority of the Department of Human Services of the state of Minnesota. They're the ones that get to implement the pricing for DEMI posts, the coverage for DEMI posts. Council said that every bidder lied when they submitted their bids. That's exactly what I'm saying. Every bidder in every single circumstance had to put for these tubes a price which was below the bona fide bid and then had to certify under penalty of the False Claims Act that they had indeed put bona fide bids in. Council puts the Nebraska case front and center. I'm fine with that. CMS violated a clear statutory definition of a bid. Thank you. We thank both sides for the argument. The case is submitted.